UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TAMMY L. BULLIS,

                           Plaintiff,

v.                                               Case No. 3:14-CV-0513 (GTS)

COMMISSIONER OF SOCIAL SECURITY

                           Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

PETER A. GORTON                              PETER A. GORTON, ESQ.
 Counsel for Plaintiff
Lachman, Gorton Law Firm
PO Box 89
1500 E. Main St.
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.           ELIZABETH ROTHSTEIN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

# **DECISION and ORDER**

       Currently before the Court, in this Social Security action filed by Tammy L. Bullis ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 14, 15.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on August 12, 1970. (T. 116.) She completed the ninth grade. (T. 126.) Generally, Plaintiff's alleged disability consists of vertigo, multiple sclerosis ("MS"), hip injury, pelvic injury, and low back injury. (T. 121.) Her alleged disability onset date is September 16, 2002. (T. 116.) Her date last insured is December 31, 2007. (T. 117.) She previously worked as a cleaner, cashier, and convenience store clerk. (T. 122.)

### B. Procedural History

On August 18, 2009, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 117.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On March 15, 2011, Plaintiff appeared before the ALJ, Elizabeth W. Koennecke. (T. 28-46.) On June 10, 2011, ALJ Koennecke issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 9-27.) On October 25, 2012, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Plaintiff timely sought judicial review in this Court (3:12-CV-1753). On July 1, 2013, the matter was voluntarily remanded pursuant to sentence 4 of 42 U.S.C. § 405(g) for further proceedings. (T. 515-516.) On August 27, 2013, the AC subsequently issued a Notice of Order of Appeals Council Remanding Case to Administrative Law Judge. (T. 518-522.) On December 16, 2013, Plaintiff again appeared before ALJ Koennecke. (T. 483-514.) On February 25, 2014, ALJ Koennecke issued a written decision finding Plaintiff not disabled under the Social Security Act. (T.

454-482.) The decision of the ALJ became the final decision of the Commissioner on April 26, 2014, sixty-one days after the decision of the ALJ.[1]

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 460-474.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2007 and Plaintiff had not engaged in substantial gainful activity since September 16, 2002. (T. 460.) Second, the ALJ found that Plaintiff had the severe impairments of facet arthopathy, a gait abnormality attributed to various causes including substance abuse, and vertigo. (*Id.*) The ALJ determined that Plaintiff's migraines/headaches, asthma, MS, obesity, substance abuse, and borderline intellectual functioning were non-severe impairments. (T. 462-465.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 465.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform:

> sedentary work[2] . . . except [Plaintiff] cannot perform constant bending and should not be exposed to hazards. [Plaintiff] retains the ability to understand and follow simple instructions and directions, perform simple

---

[1] Neither party specifically address how the decision of the ALJ became the final decision of the Commissioner. Plaintiff's brief incorrectly stated the AC denied review; however, the Plaintiff subsequently corrected her brief. (Dkt. Nos. 14, 19.) Defendant's brief states that the ALJ's decision became the Commissioner's final decision after Plaintiff declined to file written exceptions. (Dkt. No. 15 at 2 [Def.'s Mem. of Law].) The ALJ's decision specifically stated: "[this] decision will become final on the 61st day following the date of this notice. After [this] decision becomes final, [Plaintiff] will have 60 days to file a new civil action during the 60-day period starting with the day [this] decision becomes final." (T. 455.) It appears that 20 C.F.R. § 404.966 (Testing Elimination of the Request of Appeals Council Review) was implemented in this case; however, the ALJ's decision does not cite to any Regulation or other authority.

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a).

tasks with supervision and independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, relate to and interact appropriately with others to the extent necessary to carry out simple tasks, handle simple repetitive work related stress in that [Plaintiff] can make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that do not require [Plaintiff] to supervise or manage the work of others.

(T. 465.) Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 472-473.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes essentially five separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ's mental RFC was not supported by substantial evidence. (Dkt. No. 14 at 8-13 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ's physical RFC was not supported by substantial evidence. (*Id.* at 13-17.) Third, Plaintiff argues the ALJ failed to consider testimony from Plaintiff's privately retained vocational expert ("VE"). (*Id.* at 17-19.) Fourth, Plaintiff argues the Defendant failed to sustain her burden at step five. (*Id.* at 19-21.) Fifth, and lastly, Plaintiff argues the ALJ failed to properly assess the medical evidence. (*Id.* at 21-23.)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues that the ALJ's RFC finding was supported by substantial evidence. (Dkt. No. 15 at 6-17 [Def.'s Mem. of Law].) Second, and lastly, Defendant argues the ALJ properly found that Plaintiff was not disabled at step five. (*Id.* at 17-19.)

4

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Whether the ALJ's Mental RFC was Supported by Substantial Evidence.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15 at 6-11 [Def.'s Mem. of Law].) The Court adds the following analysis.

A RFC is "the most [a plaintiff] can still do despite [her] limitations. 20 C.F.R. §§ 404.1545, 416.945. The ALJ is responsible for determining a plaintiff's RFC. *See Id.* §§ 404.1527(d)(2), 416.927(d)(2). Plaintiff argues the ALJ failed to take into account all of her mental limitations in her RFC analysis, specifically limitations imposed by consultative examiner, Cheryl Loomis, Ph.D. (Dkt. No. 14 at 8-13 [Pl.'s Mem. of Law].) Defendant counters that the ALJ properly evaluated the medical opinion of Dr. Loomis and the ALJ's mental RFC is supported by substantial evidence. (Dkt. No. 15 at 6-11 [Def.'s Mem. of Law].)

Dr. Loomis examined Plaintiff twice, once in 2013 and once in 2014. In 2013 Dr. Loomis performed a "Psychiatric Evaluation." (T. 771-774.) Dr. Loomis's 2013 mental examination of Plaintiff revealed that she was cooperative, had adequate social skills, her attention and concentration were intact, and her recent and remote memory skills were mildly impaired "most likely due to nervousness." (T. 772-773.) Dr. Loomis noted that Plaintiff's cognitive functioning appeared to be below average to average, with an appropriate fund of knowledge. (T. 773.) She recommended vocational training. (*Id.*) In a medical source statement Dr. Loomis opined:

> [the Plaintiff] can follow and understand simple directions and instructions and perform simple tasks independently. [The Plaintiff] can maintain attention and concentration, maintain a regular schedule, and learn new tasks. [The Plaintiff] cannot perform complex tasks independently or with supervision. [The Plaintiff] can make appropriate decisions, relate adequately with others, and appropriately deal with stress. The difficulties today were caused by her nervousness.

(*Id.*)

In 2014 Dr. Loomis conducted an "Intelligence and Adaptive Behavior Scale Evaluation." (T. 1001-1004.) At that time, Dr. Loomis observed Plaintiff was able to recall and understand instructions "with ease" and her attention and concentration were "good." (T. 1002.) Test results indicated Plaintiff's full scale IQ score, based on the Wechsler Adult Intelligence Scale, Fourth Edition ("WAIS-IV"), was 74. (T. 1003.) Dr. Loomis stated a score of 74 fell in the "borderline intellectual functioning range." (*Id.*) Dr. Loomis diagnosed Plaintiff with "mild intellectual disability." (T. 1004.) Dr. Loomis again recommended vocational training. (*Id.*) In a medical source statement, Dr. Loomis opined:

> [The Plaintiff] exhibited no impairment in her ability to learn new tasks, relate adequately with others, and appropriately deal with stress. [The Plaintiff] exhibited moderate impairment in her ability to follow and understand simple directions and instruction, perform simple tasks independently, and make appropriate decisions. [The Plaintiff] exhibited marked impairment in her ability to maintain attention and concentration, maintain a regular schedule, and perform complex tasks independently or under supervision.

(*Id.*)

The ALJ provided Dr. Loomis's 2014 opinion "limited weight," reasoning that it was inconsistent with her 2013 opinion, Plaintiff's activities of daily living, and Plaintiff's demonstrated abilities. (T. 472.) Although not provided a specific weight, the ALJ stated that in formulating her mental RFC she relied, in part, on Dr. Loomis's 2013 evaluation.

8

(T. 472.) Plaintiff argues the ALJ erred in not adopting Dr. Loomis's 2014 opinion that Plaintiff had "marked" limitations in her ability to maintain attention and concentration and "marked" limitations in her ability to maintain a regular schedule. (Dkt. No. 14 at 9 [Pl.'s Mem. of Law].) In support of her argument, Plaintiff stresses Dr. Loomis's opinion is uncontested and further, was actually supported by Ryan Little, F.N.P. (*Id.* at 11.)

First, the ALJ determined Plaintiff's borderline intellectual functioning was a non-severe impairment at step two. (T. 463.) Plaintiff does argue, in a footnote, that this was in error. (Dkt. No. 14 at 10 n.1 [Pl.'s Mem. of Law].) However, any error in this regard was harmless, as the ALJ adequately provided for Plaintiff's mental limitations in her RFC analysis.[3]

Second, Dr. Loomis's 2014 conclusion that Plaintiff had "marked" limitations in her ability to maintain attention and concentration conflicts with her own observation and

---

[3] At step two of the sequential evaluation process, the ALJ must determine whether the plaintiff has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *See* C.F.R. §§ 404.1520(c), 416.920(c). The plaintiff bears the burden of presenting evidence establishing severity. *Miller v. Comm'r of Social Sec.,* No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel,* No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)). In addition, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Lasiege v. Colvin*, No. 12-CV-01398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. § 404.1523, 416.923 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity"). It has been well established that "[b]ecause step two merely serves as a filter to screen out *de minimis* disability claims, a finding of any severe impairment, whether attributable to a single condition or a combination of conditions, is enough to satisfy its requirements." *Kessler v. Colvin*, 48 F.Supp.3d 578, 593 (S.D.N.Y. 2014) (*citing Fortier v. Astrue*, No. 10-CV-01688, 2012 WL 3727178, at *9 (D. Conn. May 11, 2012)).

other evidence in the record. Dr. Loomis observed in 2014 that Plaintiff "recalled and understood instructions with ease" and further, her "attention and concentration were good." (T. 1002.) In 2013 Dr. Loomis observed Plaintiff could maintain attention and concentration and maintain a routine. (T. 773.) A neurological examination performed in February of 2011 described Plaintiff as "disheveled," but "alert and attentive" and her concentration was "intact." (T. 426.) The ALJ also properly looked at Plaintiff's activities of daily living and past work performance as an indication of Plaintiff's ability to maintain attention and concentration, and keep a routine schedule. For example, Plaintiff managed her own finances, she was able to live alone, she read books weekly, she could go shopping, and she could drive. (T. 708-712.) Plaintiff stated that difficulties in concentration "depend[ed] on how the day [was]" and if she was "tired." (T. 715.) She reported she had problems completing social security forms due to her vertigo, not due to cognitive issues. (T. 142.)

Further, although Plaintiff alleged a learning disability, she did not allege that she stopped working due to any cognitive issues. (T. 686.) Plaintiff worked as a cashier, which she stated, "was not a problem until they put a five-gallon bucket of kitty litter up on the belt, and that's what caused the injury." (T. 142.) She was able to work successfully, but stopped due to physical, not cognitive, reasons.

Plaintiff argues Dr. Loomis's opinion that Plaintiff had a "marked" limitations was supported by Nurse Little's medical source statement. (Dkt. No. 14 at 11 [Pl.'s Mem. of Law].) Nurse Little opined Plaintiff had diminished concentration and she would be off tasks 33% of the work day. (T. 843.) However, Nurse Little stated that these limitations were due to Plaintiff's *physical* impairments, not cognitive issues. (*Id.*) Therefore, Nurse Little's statements do not in fact support Dr. Loomis's cognitive limitations.

10

The ALJ's mental RFC was supported by substantial evidence. The majority of the mental limitations in the RFC were adopted from Dr. Loomis's 2013 mental examination, and to an extent, her 2014 examination. The ALJ was proper in affording "little weight" to Dr. Loomis's opinion that Plaintiff had "marked" limitations in the areas of attention and concentration and ability to keep a routine, because the ALJ relied on Plaintiff's activities of daily living, inconsistency within Dr. Loomis's observations, and the fact that Plaintiff stopped work due to physical problems in weighing her statement. *See Lawler v. Astrue*, 512 F.App'x. 108 (2d Cir. 2013).

### B. Whether the ALJ's Physical RFC was Supported by Substantial Evidence.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15 at 11-17 [Def.'s Mem. of Law].) The Court adds the following analysis.

Plaintiff's main contention with the ALJ's physical RFC determination is that the ALJ determined Plaintiff could perform sedentary work; however, medical opinions in the record include limitations on sitting and a need for a sit/stand option. (Dkt .No. 14 at 14-17 [Pl.'s Mem. of Law].)

First, the ALJ's RFC limiting the Plaintiff to sedentary work, with no sit/stand option, was supported by substantial evidence. Plaintiff argues the ALJ should have adopted Lawrence Wiesner, D.O.'s opinion that Plaintiff could sit less than two hours per work day and could only sit for ten minutes before needing to change position from sitting or standing/walking at will. (Dkt. No. 14 at 16 *referring to* T. 820 [Pl.'s Mem. of Law].) Plaintiff argues Dr. Wiesner's opinion was further supported by Nurse Little who opined Plaintiff would need to change positions every twenty minutes (*Id. referring to* T.

843) and Richard Terry, D.O., who opined Plaintiff could not sit six hours per day and would need freedom to alternate positions (*Id. referring to* T. 430-431.) The ALJ correctly rejected Dr. Terry's limitations, as the form he completed clearly stated it was completed "per patient's response." (T. 430-431.) Therefore, the form was properly treated as Plaintiff's testimony and not medical evidence.

Regarding Nurse Little and Dr. Wiesner, the ALJ also properly afforded those opinions "minimal" and "limited" weight respectively.[4] Nurse Little's imposed limitations are not supported by his treatment notes. For example, during Plaintiff's initial examination to establish care in 2011, Nurse Little noted she had no motor weakness, no sensory loss, and an intact gait and balance. (T. 857.) Further, Plaintiff's overall care with Nurse Little focused primarily on routine care and medication management. (T. 853-993.) Dr. Wiesner examined Plaintiff once and did not review any of her medical records. (T. 815.) Therefore, the ALJ properly weighted the opinions of Nurse Little and Dr. Wiesner in accordance with the Regulations.

Second, although medical opinion evidence suggests that Plaintiff may have restrictions in sitting, the ALJ's RFC determination limiting Plaintiff to sedentary work was supported by substantial evidence. Kamlesh Desai, M.D. opined Plaintiff had "difficulty ambulating after prolonged sitting," but "[o]nce she gets moving the ambulation improves." (T. 746.) Plaintiff argues this was inconsistent with the ALJ's finding that Plaintiff can sit for six hours in a work day. (Dkt. No. 14 at 14 [Pl.'s Mem. of

---

[4] The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2).

Law].) However, difficulty ambulating after prolonged sitting does not equate to difficulty with prolonged sitting itself. Plaintiff asserts consultative examiner, Gilbert Jenouri, M.D.'s opinion that Plaintiff should avoid "sitting long periods" supports Dr. Desai's limitations. (*Id. referring to* T. 769.) However, Dr. Jenouri stated Plaintiff had "mild" restrictions to "sitting long periods." (T. 769.) A mild restriction to sitting long periods of time is not necessarily inconsistent with sedentary work.

VE testimony illustrated that he took into consideration Plaintiff's inability to be in a static position all day. The VE testified that based on the ALJ's hypothetical, that ultimately became the RFC, Plaintiff could perform work as a laminator (DOT 690.685-258), an order clerk (DOT 209.5670914), and an assembler (DOT 734.687-018); however, the VE testified that the occupation bases of those jobs were eroded. (T. 495.) After a question posed by Plaintiff's counsel regarding erosion, the VE testified:

> [t]he fact that the [hypothetical] person can't be in one position all day, can only sit for six hours, stand or walk for four, means there's got to be two hours out of the day that the person – at least minimum of two hours that the person is moving. That affects the manufacturing jobs because every time you move it takes away from the ability to attempt to do the work, function so that where – if you notice the ones that I eroded were the ones that are responsible for producing objects. That's the reason for the erosion.

(T. 496.) The VE's testimony regarding the work Plaintiff could perform reflected Plaintiff's inability to sit in a static position for six hours out of an eight hour work day.

The very nature of sedentary work does not require a plaintiff to sit for six hours at one time, "[i]n order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals." SSR 96-9P (S.S.A. July 2, 1996). The Second Circuit has observed, "[t]he

13

regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight." *Halloran v. Barnhart,* 362 F.3d 28, 33 (2d Cir.2004).

For the reasons stated herein, the ALJ's physical RFC is supported by substantial evidence.

### C. Whether the ALJ Erred in Failing to Consider Vocational Testimony Supplied by Plaintiff.

After carefully considering the matter, the Court answers this question in the negative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15 at 17-19 [Def.'s Mem. of Law].) The Court adds the following analysis.

Plaintiff argues that the ALJ's refusal to accept Plaintiff's privately retained VE violated principles of due process. (Dkt. No. 14 at 17-19 [Pl.'s Mem. of Law].)

First, this Court has concluded in Part IV.A-B that the ALJ's RFC was supported by substantial evidence. Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record).

The Plaintiff's argument that failure to introduce her own VE testimony renders her ability to cross-examine or challenge the opinion of a VE is somehow "meaningless" is meritless.[5] Plaintiff relies on, *Townley v. Heckler*, 748 F.2d 109 (2d Cir. 1984), in support of her argument; however, the case at bar is vastly different. In *Townley* the ALJ

---

[5] Plaintiff's argument that the ALJ "exclude[ed]" and "refused" to consider the VE evidence is also without merit, as the ALJ clearly considered it and afforded it "no weight." (T. 474.)

used *post-hearing* VE testimony, the plaintiff was denied the opportunity to examine the vocational report, and the plaintiff was denied a request for a supplemental hearing to question the VE; therefore, the Court concluded plaintiff's due process was denied. *Townley*, 748 F.2d at 114. Here, Plaintiff's counsel cross-examined the VE at great length and in immense detail, approximately 18 pages of transcript deal with Plaintiff's counsel questioning the VE. (T. 496-514.) There was nothing that Plaintiff asked of her own VE that she could not ask, or did not have an opportunity to ask, the VE at the hearing. During Plaintiff's cross-examination of the VE she was offered ample opportunity to present medical evidence in the record to rebut the VE testimony. In addition, there was no new or additional medical evidence introduced post-hearing that may have altered the VE's testimony. Therefore, Plaintiff's due process was not violated because she was afforded ample time and opportunity to cross-examine the VE at her hearing.

### D. Whether the ALJ Failed to Sustain Her Burden at Step Five and Whether the ALJ Failed to Properly Assess All the Medical Evidence.

After carefully considering the matter, the Court answers this question in the negative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15 at 17-19 [Def.'s Mem. of Law].) The Court adds the following analysis.

As stated in Part IV.A-C, the ALJ's RFC was supported by substantial evidence and the ALJ properly relied on the VE testimony. Again, this Court reiterates, because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983)

(approving a hypothetical question to a vocational expert that was based on substantial evidence in the record).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: September 4, 2015
Syracuse, NY

_____
Glenn T. Suddaby
U.S. District Judge